The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning and welcome to the Ninth Circuit. I'm sure this chair is being a little difficult today. I am Judge Sung. My chambers are here in Portland, Oregon. I'm very pleased to be sitting with my colleagues Judge McKeown and Judge Fitzwater who's visiting us from the Northern District of Texas and we really appreciate his help all week and many other times that he's come to help the court. We'd also like to thank our excellent court staff, especially our courtroom deputy all week, Ms. Dodds, and we will take up the cases as they appear on the calendar starting with, I believe it is, Burke v. Bisignano and now both our counsel are appearing remotely. Go ahead, Mr. Janich. Okay, thank you. May it please the court, my name is Eitan Castle-Janich and I am representing Elizabeth Burke in this appeal. Burke applied for disability benefits in May 2015. She's been unable to work since April 2015 due to combined functional effects of many severe impairments including lupus, ankylosing spondylitis, obesity, kidney disorder, attention deficit hyperactivity disorder, depressive disorder, personality disorder, and post-traumatic stress disorder. After her case was denied by one ALJ, she appealed and the district court reversed the decision and remanded her claims for a new hearing. After a new judge also denied her claims, we appealed again and the district court affirmed ALJ Meyers' decision. That is the ALJ decision that's under appeal here. Okay, counsel, I understand your main contention is that the ALJ improperly discounted the subjective symptom testimony, is that correct? Go ahead, I'm sorry. So because for lack of corroborating objective medical evidence versus inconsistencies. So I just want to confirm that they could consider lack of corroborating objective medical evidence if they have other factors to consider as well, such as conservative treatment or other factors other than just the mere absence of corroborating medical evidence. So I did notice in the ALJ decision that there was a reference to lack of indication of the need for, with respect to the lupus, lack of indication of a need for more aggressive treatment. Can you address that? Why wouldn't that be a sufficient plus factor in addition to the lack of objective medical evidence? Because there isn't any additional treatment that was available to her that would have made a difference with her lupus. So she has, she has, that's one of her, she's got several impairments that are not really amenable to, some of the most severe impairments are not really amenable to anything more than conservative treatment. So the same is true with the ankylosing spondylitis, which is very painful when it's painful, but it comes and goes. The lupus is the same thing. The lupus has flares and when it flares, she's completely incapacitated. When it doesn't flare, well, she's got all these other problems as well that continue to limit her functioning. And so in this case, there is not, you know, once she has shown, and she did show here, and it's not disputed that she has medical impairments that can reasonably be expected to cause her symptoms, and that's not reasonably disputable. And her testimony solely based on that. But the other reasons, none of the other reasons given by the ALJ are supported by substantial evidence, let alone clear and convincing. And they need to be clear and convincing. The ALJ lists many reasons that are, I mean, he actually did, he made a few mistakes where he repeated, he repeated mistakes from the previous ALJ's decision that were actually the part of the basis for the district court's reversal of that decision. And he, so the ALJ did not, and other things that he analyzed, he had factual errors about her ability to drive, where she at times could drive, at times could not drive, and he compared her, one, I think it was 2017, being able to drive in 2019, or 2009 she said she could, 2017 she said she couldn't, and said, oh, look, this is a big contradiction. No, she, sometimes she could drive, and sometimes she couldn't. She had periods of time where she could not drive. I recognize that, of course, with the lupus, that that does come and go, but one of the key issues here relates to Dr. Felipe. Would you address that? Okay, well, the thing with Dr. Felipe, this is, I mean, I, while the subject, well, her testimony is a key error here, the ALJ's improper rejection of her testimony. The ALJ also improperly rejected the opinions of Dr. Felipe and Dr. Wingate, both of whom opined that she had significant limitations that would essentially prevent her from performing competitive work, and none of the ALJ's reasons for rejecting those two opinions are convincing, let alone legitimate. They just aren't supported by the record, and so... What about the contradiction by lab results? Is that supported by the record? I'm not exactly following your question. You said that it's not supported, nothing supported by the record for rejecting Dr. Felipe's opinion. Weren't there lab results, though, that did contradict the opinion? No, I don't believe so, because the thing about lab results is, even with lupus, some results, you know, your results will change over time, and you're saying, I guess what you're asking is, were there lab results that contradicted his opinion? I don't believe there were. Well, I think what he said, apropos, you know, of Judge Fitzwater's questions, he said there were unremarkable lab findings. This is Dr. Felipe, and then he went on to also say the imaging and the mental status findings and results were within limits. So, I recognize that you're saying, well, lupus can come and go, but if he finds, if he's got some consistent treating notes and the lab results are within limits, why isn't that a legitimate basis for taking a look at those results? It is, but the, I mean, there's, I don't know where to begin on this. There were x-rays that showed sclerosis of the iliac side of the sacroiliac joints. I mean, there were things, there were, that's an example of something separate that has nothing to do with the lab results. If, even if one were to question Dr. Felipe's opinion that she had lupus, well, I don't really see the basis of that because he's her treating physician, he's been treating her for a long time, and he bases his diagnosis on the totality of the evidence. And so, I don't see where there's a medical basis for rejecting his opinion. And this, of course, would address the issue of Dr. Wingate's opinion about mental health problems and her findings that support that. And ALJ, that was one of the issues where he repeated a rejected rationale from the previous ALJ's decision. And so, there was no convincing or legitimate reason for rejecting Dr. Wingate's opinion. She described findings that supported it, her observations of the problems she was having, and that's consistent with her testimony. So, I don't really know what else to say about the lupus issue. If you don't have any other questions, I would like to reserve some time for rebuttal. Okay. Thank you. Go ahead, counsel. Thank you, Your Honor. Your Honors, may it please the court, I'm David Burdett. I'm here representing Mr. Bisognano, the Commissioner of Social Security in this matter. And I want to thank the court for allowing the remote appearance and putting up with a couple minutes of connectivity problems that we had there. But I'm here and we'll do our best. With regard to the main categories of Mr. Yonash's argument, the court got right to both of them. They are the testimony and the medical opinions, particularly that of Dr. Felipe. And Judge Sung made the point well with regard to testimony that an ALJ in these matters may consider objective medical evidence as long as there is what Your Honor referred to as one or more plus factors. Other things that are considered and here the ALJ did. Counsel, I just want to explain my concern. So a lot of the reasons that the ALJ offered seemed to me to be about the lack of objective medical evidence to prove up the subjective symptom testimony, which certainly by itself, I think per the agency's own regulations, would not be enough on its own to discount her testimony. So with respect to, you know, arguably lack of, you know, or conservative treatment might be an independent factor. Can you respond specifically to your opposing counsel's response to me on that? Which is that there was no more aggressive treatment available to her. I understand there's some evidence that she used to, she couldn't take steroids because of it would impact her liver, kidney function, and can't remember which. But there is essentially for her there was no other so you can't count that factor against her. That's fine, Your Honor. I don't quarrel with that, but that was not the only reason, the only additional reason that the ALJ cited. Okay, so there are other, I would say, inconsistencies. What would you point to as something other than just the absence of objective medical evidence to support? And the ALJ uses that phrasing a lot. There's no evidence to support her subjective symptom testimony. So I'm looking for very specifically something that's actually an inconsistency or, you know, one of the other independent factors that the ALJ may consider. There are at least three, Your Honor. Okay. One is the inconsistent statements regarding her activities. And so 1A would be the inconsistency regarding her ability to drive. I cannot drive, but then she testified that she did drive. Okay, so how do you deal with the date discrepancy response? So that, you know, she testified that she could at one period of time and that she couldn't at another, and the record shows she couldn't at another or reverse, something like that. Well, only that she is asserting that she is disabled by these limitations for the last 10 years now, but from 2015 all the way up through the hearing in 2023 in which she testified that she could drive. 1B would be, and this is this is similar, that she stated that she could hardly stand, that she could hardly walk for more than a few minutes at a time. But elsewhere in the record, in 2019 I believe it was, again, four years into the alleged period of disability, she walked so much that she not only testified that it made her feel better and helped her mental problems, the exercise, but she lost 30 pounds in a year by walking. So clearly that's an inconsistency. So all of that was number one. Well, is it an inconsistency if she says I could walk at some period of time and I can't anymore, and I understand you're saying she has to show disability, but to the extent it's showing a lack of credibility, is that actually an inconsistency versus just maybe she has a shorter period of disability? Do you understand my question? Yeah, I mean, I argue that it is an inconsistency. However, perhaps she would argue that she only has a shorter period of disability, but that's not the claim that she's making. She's making the claim that she is disabled for these 10 years all the way back to 2015. Now, all of this was in category number one regarding the testimony. Category number two is that a valid reason for an ALJ to discount a claimant's claims about the degree of limitation of her symptoms is that it improves with treatment, and we have evidence of improvement with treatment because she stated this is with regard to her alleged mental limitations, which are that the claim kind of seemed to morph from initially I am disabled due to the effects of lupus primarily, to later I am disabled primarily due to the disputed mental limitations that I have, degree of mental limitations, but she improved on her medications and just with talk therapy, and she made that statement on the record herself, and this court said in the Wellington case in 2017 that an improvement with treatment cited by the ALJ is a valid reason, one of those plus factors that Your Honor talked about, to discount her testimony as the degree of the claimant's symptom limitations. Category three, activities. Activities of daily living, and here we get into the fact... I thought that was category one. Sorry. No, no. Okay, no. There's another. Okay. I have another one. I have another one. Category three is looking at activities. There's a distinction to be made here between inconsistent statements about things. Okay. That was category one. Okay. And category three, which is activities that the claimant actually undertakes, and here we see that not only did she work part-time for various stretches, again, not the whole time, not substantial gainful activity, but this court did say in Ford versus Saul in that an ALJ can look at part-time work as an activity, but not only did she do that, but she was caring for, by the end of the period, four children, and initially two, and then she had two more during her period of alleged disability. Four small children for whom she was the primary caregiver, and she did claim, of course, that although her partner was out working all day every day, she got help with caring for the four kids from her mother with whom she lived, and I'm sure she did get some help, but the mother herself was also on disability, and according to the claimant's testimony, was a person with, was herself a person with extreme anxiety and would run away when people came into the building and so forth, and there are multiple references, four or five references in the record to the mother being a person who was only able to help out with the children when she was, quote-unquote, sober and feeling well, so the mother is not much help here, and four small children is a lot of work to handle. That's a very strenuous activity, and so that is, that was Category 3 of additional reasons beyond just the lack of objective medical evidence that go to justify the ALJ's finding that while she was disabled, well, she was not disabled, finding that while she was limited, she was not limited to the disabling degree that she would claim from her testimony, and all of those categories are things that this court has affirmed as clear and convincing reasons to make such a finding. I'm running low on time, and I want to talk a little bit about Dr. Felipe and the lupus that Judge McEwen brought up, if I may. Yeah, so the issue with Dr. Felipe is that back in the early stages of the period, he said she has lupus and she has hip pain, and because of this, in 2015 and 2016, Dr. Felipe says she's unable to work, she's unable to look for work, she's unable to prepare for work, and he checks boxes indicating that she cannot walk, she cannot lift even two pounds. Okay, but later in the period, the period during which the whole time she claimed to have been disabled, other doctors like Dr. Saeed Islam examined her and found that she had full motor strength, five out of five, in both her arms and legs. It was normal. She had a negative straight leg raise test for back pain. So there's medical evidence that falsifies the opinion of Dr. Felipe on that point, and with regard to Judge Fitzwater's point, that is also correct, that there were negative lupus lab serology results in 2016 and again in 2017. Now, that doesn't mean that she didn't suffer lupus, okay, and maybe this will, maybe this will illuminate the point a little bit, but she has the impairment of lupus, okay. Once she's diagnosed with lupus, we don't quarrel with the fact that she has lupus, but the matter is, what is the degree of limitation that comes from that and her other impairments? And the negative serology suggests that her lupus may be asymptomatic if at 1 to 160 dilution, I was, they do a series of tests, 1 to 10, 1 to 20, 1 to 40, 1 to 80, etc. And even 1 to 160 dilution is the first point that they can find positive anti-nuclear antibodies in the serology. It suggests that the lupus limitation on her ability to function may be rather minimal. I'm a little bit over time here, but I'd like to be able to answer any more questions if I can. Okay, thank you, counsel. Thank you, Your Honor. Go ahead. Yeah, let me start by addressing what Mr. Burgette was talking about with regard to the lupus. First of all, initially when Dr. Felipe was examined, was made his opinion about lupus, there had not been a visit to a rheumatologist since then. She saw Dr. Islam. I'm going to direct you to pages 622 and 623 in the transcript. Dr. Islam is the one who confirmed the diagnosis of lupus, so yes, it is not questionable question that she has lupus. But he also diagnosed with fibromyalgia. He also found she had the characteristic tender points. Now, for both lupus and fibromyalgia, an ALJ cannot reject a claimant's testimony about the symptoms they have just by pointing to some normal findings that are irrelevant, that have nothing to do with these impairments. And that's exactly what the ALJ did here. I do want to ask you about fibromyalgia, because we didn't get to talk about that the first time around. I know that it is one of her claims and one of her symptoms. What have the doctor said, and how has that intersected with her other impairments? Well, it intersects very closely with two others, well, a bunch of others. It intersects with the ankylosing spondylitis, which is another pain disorder, which those, you know, if you're having those two different sources of pain, you're not going to be able to know which one's causing which particular pain. It intersects with the lupus, because of some of the symptoms of lupus, including fatigue, overlap with fibromyalgia symptoms. It overlaps with the depression as well, because it leads to depression if you're in pain all the time, having to just lie down on the floor and try to avoid the pain. So, yes, it is, and that is the thing. It's like, when I looked again, and then while you, while my colleague was talking, I was looking again at the findings that the ALJ kept pointing to, and what is that he cited as well, that there was normal muscle strength. That doesn't say anything about fibromyalgia. So, you can't, you know, that's the problem here. I mean, the ALJ was grabbing at, was pointing to normal findings that are completely consistent with the impairments of fibromyalgia and lupus, and yet improperly relying on those normal findings, when there were also abnormal findings, which confirmed that these impairments were present. But the thing is, with fibromyalgia and lupus, and as true of many impairments, you can't simply look at the diagnosis and say, well, this person has certain limitations based on the diagnosis. That's never true. And instead, you've got to listen to what she has to say about it, and her testimony about the limitations that she was having throughout, for many years throughout this period, which waxed and waned, because she got, did get somewhat better at times, did more, fought it off, worked when she could. But you have to look at the whole picture, and the reasons that the ALJ gave for rejecting the opinions of Dr. Felipe, and rejecting her testimony about her fibromyalgia and lupus symptoms, the ALJ's reasons are not clear and convincing. The questions? All right. Thank you, counsel, both for your arguments today. This matter is submitted.
judges: McKEOWN, SUNG, Fitzwater